B. Joseph Heitkamp, Appellant, v. LaMotte Granite Company *et al.*, Respondents.

### St. Louis Court of Appeals, November 7, 1894.

1. **Mortgages:** RIGHT OF ACTION OF MORTGAGEE FOR WASTE. The beneficiary in a deed of trust may, after entry and foreclosure, maintain an action for permanent injuries to the mortgaged premises, which were committed by the mortgagor or third persons while in possession and before condition broken, and were productive of a loss on the mortgage debt.

2. **Parol Evidence in Variance of Mortgage:** DESCRIPTION OF PROPERTY CONVEYED. The property conveyed by a deed of trust must be determined by the deed itself. No parol understanding between the parties can limit the operation of the terms of the deed in respect thereto.

3. **Trespass:** MISJOINDER OF PARTIES. *Held*, in the course of discussion, that claims for distinct and separate trespasses, committed by different parties defendant, can not be joined in one action.

*Appeal from the Madison Circuit Court.*—Hon. James D. Fox, Judge.

Affirmed in part, AND REVERSED AND REMANDED in part.

*B. B. Cahoon* and *Wm. N. Nalle* for appellant.

*Ed. Anthony* and *M. R. Smith* for respondents.

Biggs, J.—This is an action for waste, alleged to have been committed by the respondents on certain mortgaged premises. On the fifteenth day of March, 1889, the LaMotte Granite Company executed and delivered to the plaintiff its promissory note for $4,000, due one year after its date. On the day of its date the note contains a credit of $1,500, paid by the respondent L. E. Irwin, president of the company. To secure

this note the company executed a deed of trust on certain real estate in Madison county. There were five separate tracts of land conveyed. One of the tracts was described as "sixty rods square of ground, containing the quarry known as the Simpson granite quarry," etc. The plaintiff claims that on or about the first day of March, 1890, the respondents unlawfully and wrongfully removed from the mortgaged premises, and converted to their own use, the following property, viz.: One log and frame blacksmith shop, of the value of $250; one frame house and stables, of the value of $300; ceiling, flooring and weatherboarding attached to one frame dwelling, of the value of $200; granite and other rock and stone, good for building, paving and other purposes, of the value of $1,000; two derricks, with all fixtures and appliances to work the same in getting out stone on said premises, of the value of $1,000; iron, wooden and rock railways and tramways, with cars thereto belonging, of the value of $3,000; one frame storehouse, of the value of $250; seven hundred and fifty feet of syphon or drainage pipe, of the value of $300; thereby lessening the value of plaintiff's security, and rendering it inadequate for the payment of his debt. The petition further alleges a subsequent entry by plaintiff and the foreclosure of the mortgage, and that the amount realized at the foreclosure sale was only $609, leaving a balance due on plaintiff's debt of $2,114.88, with interest thereon from April 28, 1890, for which he asks judgment against the respondents.

The answer of the LaMotte Granite Company contained a general denial, and it also set forth the facts and circumstances out of which the litigation has arisen, which, on the trial, were shown to be substantially as follows: John Simpson formerly owned the mortgaged premises, and operated the quarry tract.

For the purpose of securing his note to plaintiff for $4,000, he, together with his wife, executed a deed of trust on the land, and also gave a chattel mortgage on a lot of granite paving blocks, then on the premises, and also on the tools, machinery appliances, etc., used at the quarries, which were described as follows in the chattel mortgage: "All derricks, tools, implements, machinery, appliances, wagons, trucks and teams, owned by us and used in the business of quarrying and hauling and shipping granite paving blocks, and other granite rocks found at our granite quarries," etc. The LaMotte Granite Company subsequently became the the owner of the real estate, and also of the tools, appliances, etc., which were used at the quarry. In its purchase the company assumed the Simpson debt. Under a subsequent arrangement with the plaintiff the payment of the balance due on this debt was extended for one year, the company at that time paying thereon $1,500. To carry out this arrangement the company executed the note and deed of trust mentioned in the petition. At the same time the old deed of trust and the chattel mortgage executed by Simpson were canceled by plaintiff and surrendered to the company.

On July 22, 1889, the LaMotte Granite Company executed its note to one W. H. Saeger for $5,000, due sixty days after date. To secure this note, the company executed and delivered to Saeger a chattel mortgage on the tools, appliances, etc., used in connection with the quarry. The property is described in the mortgage as follows: "Six (6) thousand eight-inch granite paving blocks, and the company's interest in fourteen (14) thousand eight-inch granite paving blocks, said interest amounting to about $900; also, twenty-five (25) thousand five-inch granite paving blocks; also, the merchandise now boxed and at the company's store at Skrainka, Missouri; also, the

machinery and appliances at company's quarry at Skrainka, consisting of engine and boiler, one steam Ingersoll drill, two dump cars and trucks, steel drills, two (2) derricks and guy ropes, two (2) bellows, anvils and chain, one (1) wheel scraper, two carts, a lot of hammers, and one blasting battery, and other personal property at the company's quarry; the above blocks at Pisgate switch and in Madison county, Missouri." By the terms of the mortgage, the company was to remain in possession until default was made in the payment of the debt. In case of default, Saeger might enter the premises and take possession of the mortgaged property, and sell the same at public or private sale, etc. The company did fail to pay the debt, and Saeger sold under the mortgage. The respondent Abbott acted as his agent in the foreclosure proceeding. Subsequently, but prior to the maturity of the plaintiff's debts, Abbott, as the agent of Saeger, employed a third party to remove the property so sold from the premises. Upon the foregoing state of facts it was claimed that the property mortgaged to Saeger and removed under the orders of Abbott was personalty, and that it had been so treated by the plaintiff in his dealings with Simpson and the company.

In addition to the averments in the answer of the granite company, the respondent Irwin denied that he was concerned in the removal of the property, or that he was in any wise interested in the subject-matter of the suit. He averred that his connection with the property had been solely as president of the granite company. The answer of Abbott is a general denial.

The replication is to the effect, that the note of the granite company was merely a renewal of the Simpson note, and that the plaintiff by accepting the new note and new deed of trust did not release any portion of

his original security. The averment was also made that the Saeger note and chattel mortgage were fraudulent, and that they were executed for the purpose of defrauding the plaintiff.

The court refused all instructions asked by the parties, and gave the following on its own motion.

"1. Gentlemen of the jury, you are instructed that under the pleadings and evidence in this cause, plaintiff is not entitled to recover as against the defendants, A. F. Abbott and L. E. Irwin. ,

"2. You are further instructed that the derricks, engines and appliances thereto attached, drills and blacksmith tools and trucks upon the tramway, under the law and evidence in this case, were at the time of the removal (if you so find that they were so removed) chattels, and plaintiff is not entitled to recover therefor.

"3. You are further instructed that the tramway and syphon drainage pipe as attached and annexed to said premises were a part of the realty, and, if you find and believe from the evidence in this cause that the defendant, or its agents or employees, removed said property from said premises or despoiled the premises of the same, then, and in that case, you will find the issues for the plaintiff, unless you should find from the evidence in this cause that the conduct of the plaintiff and defendant towards said property, that it was their intention to treat the same as chattels and was to be so regarded by both plaintiff and defendant, then and in that case your finding as to such property should be for the defendant. You are further instructed that, although you may find that defendant treated the property as chattels and intended that such property should be regarded as chattels, yet such intention on its part will not exempt it from liability, unless you find that plaintiff also treated such property as chattels, and

so intended in dealing with the premises that such tramway and syphon or drainage pipe should be regarded as chattels.

"5. You are further instructed that the buildings upon said premises were a part of the realty; and if you find that the defendant, or its agents or employees, injured or destroyed said buildings, or any portion thereof, and thereby depreciated plaintiff's security for his debt, then you will find that issue for the plaintiff, and assess his damages at such sum as you may find that his security, the real estate upon which he had a deed of trust, was depreciated by reason of the injury to such property.

"6. If you find the issues as to the tramway and syphon pipe or drainage for the plaintiff, you will assess his damage at such sum as you may find from the evidence was the reasonable value of such property as it was in place upon the premises at the time of the removal."

The jury returned a verdict in favor of the plaintiff for $100, upon which judgment was entered. The plaintiff has appealed.

It is insisted by the defendants that, aside from other considerations, the plaintiff has no reason for complaint, because the evidence fails to show a *fraudulent purpose* to injure or depreciate the plaintiff's security, and that, therefore, the judgment which plaintiff obtained was more than he was entitled to under the law and facts. We had better dispose of this matter in the outstart.

The supreme court in the case of *Chouteau v. Boughton*, 100 Mo. 406, decided that the beneficiary in a deed of trust may, after entry or foreclosure, maintain an action against the mortgagor or third persons for permanent injuries to the mortgaged premises, which were committed while the premises were in the

possession of the mortgagor.   This ruling rests on the idea, that "the law by a kind of *jus post liminii* supposes the freehold all along to have continued in the mortgagee."  1 Jones on Mortgages [4 Ed.] section 687. Whether the mortgagee, prior to entry or foreclosure, can sue for such injuries, unless committed with the fraudulent purpose to injure the mortgagee in his security, is a matter concerning which the authorities. do not agree.   In the case of *Logan v. Railroad*, 43 Mo. App. 71, we held that such an action ought not to be maintained.   However, we have no such case here. The present action was brought after entry and foreclosure, and, under the authority of *Chouteau v. Boughton, supra*, it was properly brought.

The second instruction was clearly right.   That the articles mentioned therein were chattels and not fixtures, there can be no doubt under the evidence. It is true that the articles were used in operating the quarry, but there was no annexation.   The derricks were erected in the usual way,—that is, upheld by guy ropes—and the engine was portable and furnished the power for moving the stone in and about the quarry. It was moved from place to place as the exigencies of the work required.

The instruction of the court as to the non-liability of Irwin was also correct.   The only connection which Irwin had with the alleged trespass was the execution of the chattel mortgage to Saeger.   As president of the granite company he executed that instrument. Of this the plaintiff has no right to complain, as the mortgage does not purport to convey anything but personalty, upon which the plaintiff at that time had no claim; and even though it conveyed fixtures, it would have operated merely as a second mortgage. He had nothing whatever to do with the sale of the property thereunder, or its subsequent removal., There

was some proof that the servants of the granite company tore down a blacksmith shop and dismanteled a storehouse situated on the premises, but there is not a particle of evidence connecting Irwin personally with it. At the time he was at his home in Kansas City. But the instruction as to Abbott was erroneous, as we will hereafter show.

The third instruction ought not to have been given. The property actually conveyed by the plaintiff's deed of trust must be determined by the deed itself. No parol understanding between the parties can limit its operation in this respect. All fixtures on the land at the date of the deed passed, as the instrument contained no reservations. *Elliott v. Wright*, 30 Mo. App. 217. Hence, all the testimony as to the manner in which the plaintiff and Simpson dealt with the property, and that the plaintiff surrendered for cancellation the chattel mortgage on the appliances, tools, etc., executed to him, was totally irrelevant. If other implements or appliances (to be used in the quarry) were subsequently annexed by the company, it would have been competent for the defendant to show by parol evidence that it was agreed that such articles should remain chattels,—notwithstanding their annexation; but such evidence as to the existing fixtures was clearly incompetent by reason of its tendency to contradict or vary the terms of the deed of trust. In this respect the instruction was prejudicial to the plaintiff as to the liability of Abbott. On the other hand, the instruction was entirely erroneous as to the granite company, for the reason that there is no evidence which tends to connect the company with the removal of the syphon pipe or tramway, or their subsequent conversion. So far as this record shows, the conduct of the company in reference to the removal was entirely passive. There-

fore the instruction was erroneous and prejudicial as to both the plaintiff and the granite company.

Touching the liability of Abbott for the removal of the tramways and syphon pipes, the evidence tends to show that one Gustus, acting under the orders of Abbott, removed the engine, tools, derricks, *tramways*, *syphon pipes* and other implements and appliances used in connection with the quarry, and also the blacksmith shop, and that Abbott acted as the agent of Saeger. This was all that Abbott had to do with the alleged trespass, except that he conducted the foreclosure sale of the mortgaged property as the agent of Saeger. The evidence does not show that Abbott gave Gustus specific directions as to the removal of the property, or as to what particular property belonged to Saeger; hence he is responsible for whatever Gustus did in the execution of the work. There was also some evidence that Gustus tore down and removed the blacksmith shop. If he did, then Abbott would likewise be responsible for that. For these reasons the instruction of the court, that Abbott was not liable, ought to have been refused.

There is some evidence in the record that the granite company tore away the blacksmith shop, and perhaps other buildings. If this be true, then the company is *solely* liable therefor, as there is no evidence of a joint trespass or of a combination between it and Abbott to injure the mortgaged property.

From the foregoing it is quite apparent that there is a misjoiner of parties defendants, for there is no joint liability proved. For the removal of the tramways and syphon pipes Abbott alone, if anyone, is liable. For the removal of the blacksmith shop the evidence tends to show a liability both of Abbott and the company. But the evidence points to two distinct and separate trespasses, one tending to prove the guilt

of Abbott, and the other the guilt of the company. Both can not be guilty. We call attention to these matters, in view of another trial, in order that the defendants may, if so advised, take advantage of the misjoinder by proper pleadings. *Anderson v. McPike,* 41 Mo. App. 328.

The testimony introduced by the plaintiff as to the representations of Irwin, that the deed of trust from the granite company to the plaintiff conveyed all the security that the plaintiff held from Simpson, was totally irrelevant. This is an action at law for the removal and conversion of mortgaged property. The plaintiff's right of action depends *solely* on the fact that the property alleged to have been removed or destroyed was conveyed by his deed of trust. Therefore evidence of the representation of Irwin, that additional property was, or would be, conveyed by the deed of trust, is incompetent in this action.

Other questions are presented and discussed in the briefs, to which we need not refer. What we have said is deemed sufficient for the purposes of another trial.

With the concurrence of the other judges, the finding of the circuit court as to Irwin will be affirmed. As to the other defendants the judgment will be reversed and the cause remanded. It is so ordered.